Good morning, Your Honors. Tim Warriner for the appellant, Mr. Hossnieh. In this case, the trial court, when retained counsel subbed in, the trial court gave him 25 days to prepare for trial. And during that time period, he acted as diligently as somebody could do facing trial within 25 days. He, at the time he subbed in, he asked for some more time, which was denied. What did he ask, what did he tell the court he wanted the time for? He mentioned specifically that he had to consider hiring of expert witnesses. I thought he had already, according to the declaration of the psychiatrist, had been hired. Not at the time of the February 17th conference when the trial was set. Well, it would be helpful to understand the sequence. I looked at his declaration. He said he was called in, apparently, and hired by the original attorney. In 2008. That's correct. And it doesn't say when he terminated that relationship, because my understanding is that the transfer between the two attorneys happened concurrently, isn't that correct? He was hired by the original attorney for the purpose of a detention hearing back in 2008. Then there were. There's no evidence as to when that relationship stopped. There isn't, but there were, there was another court-appointed lawyer after that first lawyer who used the doctor. So there were two court-appointed lawyers, and then there was the retained lawyer. I see. Okay. Thank you. So the retained lawyer did express to the court his concern about the need to retain experts. And under the circumstances of 25 days, I think that there was an adequate diligence. Didn't he already? I'm losing track of the sequence now. Okay. My understanding was that he had the expert. The expert filed a report. Right. When would the continuance ask, right, that he could deal with what the court found lacking in the declaration that was submitted that caused him to exclude it? Yeah. The sequence is this, that at the time the trial date was set, the retained counsel had not retained the expert for purposes of trial. Then that he retained the expert, that was February 17th. On March 3rd is the date that Dr. Sokolov's declaration says that he was retained. On March 7th was the date that Dr. Sokolov completed his written evaluation. Then on the 9th, that was given to the government. And then it was on the 10th that the government filed its motion objecting to this, saying that their 12.2 time limit notice hasn't been met. Not timely. And so when was the request for continuance made? The request for continuance was made was on the morning of trial. Okay. And that was to accomplish what? That was to accomplish that would render the government's objection on the basis of timeliness. Yes. That's all it was addressed to. Right. Okay. It didn't say that if we have more time, we can improve the quality or nature of the report. Isn't that correct? That is correct. That is correct. I think the response, hey, didn't the judge give me a continuance, was to address these 12.2 timeliness objections of the government. Right. So the court, the problem I'm having, counsel, is the court rejected the motion on two grounds. One was lack of notice, and the second was even if I consider this, I wouldn't admit it anyway. It's not, there's no nexus. The court did make the comment that there was no nexus. Right. So why isn't that an independently sufficient and appropriate ground for precluding this evidence? Because the evidence, it is admissible evidence. What Dr. Sokoloff could testify to goes directly to the specific intent. How? What does he say about specific intent? He does not attempt to say that there was no specific intent. I don't believe it's proper for an expert to say that. But what he says is that he was delusional and experienced this impulsivity, which is a lack of intent. How does that negate specific intent? Because if someone acts impulsively, they're not acting with the forethought or a specific intent to do something. He's acting impulsively at the time he's making these statements. Standard for mens rea for the offense. He knew what he was doing. He intended to threaten. The specific intent element is different. The specific intent element of this offense is that he had the, and it says he acted with the specific intent to impede, interfere with a Federal officer. So it's not just the intent to make a threat. It's I'm making this threat with the intent to accomplish something. Nothing about that intent is inconsistent with being in a manic episode from bipolar disorder, at least as Dr. Sokoloff describes it in his declaration. Nothing about the. . . I mean, one can be manic. It would seem, at least to this layperson reading what he says about it, elevated mood, irritable, feeling grandiose, not needing to sleep, more talkative, distractible, and engaging in impulsive or risky behaviors. None of that says that you can't form the specific intent to be in somebody else's way or in their face or prevent them from doing their job or any of those other things or threaten them. What I would say is that the declaration does not, the doctor did not say he did not form the specific intent. And quite honestly, I don't think that that is not the purview of the expert. No, I understand it isn't, but there's nothing that he does say that's at all inconsistent with forming the specific intent. That's what I'm suggesting to you. If it said, you know, the guy was in a catatonic state where his eyes were shut and he was dead to the world, well, maybe that would be something that's inconsistent, because if you're paying, you know, if you're semi-comatose, you're not forming a specific intent. But being impulsive and talkative and so forth, I don't understand how that's even inconsistent. Well, I guess I respectfully disagree. There are different intent issues. There's the intent to make a threat. We're not talking about that. We're talking about the statute that says that the person have the specific intent to impede, interfere with, obstruct the officer. Right. And so the impulsivity, the fact that if he's delusional and he's acting impulsively. Well, all that says to me is the difference between the manic person and the non-manic person is they both have that specific intent. It's just that one has the ability to control their impulses and not do the thing to conform to the intent, and the other goes right ahead and does it anyway, but it doesn't really talk at all about their underlying intentions, it seems to me, but just their ability not to act on those exact same intentions. You know, I don't think the doctor is saying he's not going to act on it. He's saying he's making this, he's making, he could act impulsively without, impulsiveness is without thought, without thinking, without planning, and that's what the defense was is that he said these things without any thought that he's obstructing or those specific intent elements. He's just got worked up and made some impulsive statements without that specific intent. Is this disjunctive? In other words, this violation had to show all of those things that a threat and that it was intended to impede and obstruct? Yes, impede, obstruct, or interfere with. Or, or. So you said, well, the threat, nobody, it doesn't go to whether he intended to threaten. Are you saying it was a threat, but he didn't realize it would impede or obstruct? Right. And was that a defense? Yes, it is. Disjunctive means or, so. Right, right. He did one of them, but so what difference does it make whether he was impeding or obstructing? If he intended to threaten. The statute doesn't say with the intent to threaten. The statute says made the threat with the intent to impede, obstruct, et cetera. All right. Or intimidate, I think, is one of the others. Right. Yes. So one can be impulsive and still mean to intimidate. I think it cuts both ways. But, you know, the evidence rule of 704B says that an expert can't give an opinion. Cannot, right? Applying directly on the state of mind required for the crime. Right. So he couldn't say, you know, render an opinion, yes, you know, he didn't have this intent because it wouldn't be admissible. So I suppose he has to sort of, you know, try to go around it and lay out the circumstances that would lead to a conclusion that this was the intent. I mean, that's one way to look at it. That was the point I was making is that. But the other way is that, I don't know, there's there's there's almost no, I would say, directly relevant opinion that an expert could give on this when you get to such a specific level of intent. In other words, it's hardly relevant. And that's the other argument, isn't it? I think. Which I think, you know, my colleagues are making. I think the testimony from a credible expert that Mr. Hosnia was acting impulsively, allowing defense counsel to argue that he said these things impulsively without thinking about, I'm going to interfere with this officer, I'm going to obstruct this officer. He just got worked up and said something impulsively. That's a powerful argument. Because a crime is a specific intent of crime and it goes to those specific elements. Is all this argument, I looked at this case a while back, I can't remember. Is all this argument you're making about the problem on nexus, is that all articulated in the brief? That's articulated in the brief. That's articulated. And I do think that the. So your theory is that the denial of the continuance was wrong because it was important to correct the aspect of the district court's ruling on timeliness? Yes. It was significant because it would eliminate any objection about timeliness. And that 12.2 rule even contemplates some flexibility. Okay. I understand. So then the issue that we've been talking about as to whether the alternative ground that the court articulated was that he wouldn't admit it in any event is argued as what? Is that stated as a separate issue? I went back and looked at the briefs and it didn't isolate it like that. My argument is that the court's refusal to grant the continuance was prejudicial because it would have removed this objection. The evidence was admissible, per my arguments, and it would have removed the timeliness issue. So if we were to conclude that the court was within its discretion on the timeliness, would we have to reach the prejudice ground? If you were to conclude that the court was correct in denying it on the basis that it was untimely, and not granting the continuance to cure the timeliness? Okay. My argument is that the court abuses discretion in not granting the continuance. Correct. But if we conclude that it did not abuse its discretion, then we wouldn't go on to the next level and decide whether it was correct on the nexus, really. Because that goes only to prejudice. Right.  Thank you. Did you want to save your last minute or so for? Yeah, I'll save that last minute. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I am Lee Bickley, appearing on behalf of the United States today. The defendant raises three issues, four issues in its brief. Only one of those issues goes to the defendant's guilt. All three of the other issues go to our evidentiary. And to the extent that there was any error in those evidentiary issues, the error was harmless. Let's start with the first issue that you've been discussing. I think it's very important here that the judge did make a decision on both grounds. He excluded the evidence of the expert based on the fact that it was both untimely and also no nexus has been shown. And I believe we've laid out in our briefs that this evidence of the expert, there was clearly no nexus between this and the intent that needed to be shown. There was a wealth of evidence in this case that the defendant intended to impede, intimidate, interfere with, or retaliate against Detective Halsey. And this one instance where he was supposedly in a manic state is just one instance among many. In addition, if you take what the expert has to say, that he was acting impulsively and subject to delusions, that does not undercut the intent here. The intent was to impede, intimidate, interfere with, or retaliate against Detective Halsey, and he could still have that intent even if we agree with what Dr. Sokoloff says. Well, if you say there's lots of other evidence of intent to impede, but if, in fact, the psychiatrist's analysis of what he was doing on the phone call, in any event, then it wouldn't be a nexus issue, would it? It would be a question of whether it was the issue would really be whether or not he had the opportunity to present his defense, and he was being denied the ability to put forward a psychiatric opinion as to what was motivating or what was involved in his behavior on the phone call. That would be part of his defense, and then the question would be whether it was, you know, against the other evidence, whether it ultimately would have proved prejudicial. But the nexus ground says this doesn't go to the merits of his defense at all, or the court has determined that it wasn't relevant to the charge at hand. But why wasn't it relevant? Because — Just because there's other evidence doesn't mean that it isn't relevant. But even if you take the evidence that Dr. Sokoloff was going to present, which was before the court, then it isn't relevant to the charge at hand, because even if he's acting impulsively and even if he is — has grandiose thinking, that doesn't inform whether he has the intent to impede, intimidate, interfere with, or retaliate against Detective Housey, and the — that is disjuncted. You don't think it's a proper basis for defense counsel to argue, well, you know, that he acted impulsively and didn't act intentionally? I mean, you know, I mean, one — I grant you one, I guess, you know, interpretation by psychologists of the, you know, impulse is that, well, as Judge Graber says, you know, you still act intentionally because you don't control your impulse. But another argument could be made that, well, it's impulsive and it's not intentional. So you don't think that argument is properly made if you have that opinion as a basis, that it could have been impulsive? I can't speak to all cases, but in this case, I don't think that the argument was relevant to the charge at hand, and it was not a proper basis for getting a continuance. On the day of trial, the defendant asked for a continuance, and it was both untimely and also it wasn't a evidence that was going to be relevant to the defense in this particular case. But you just answered Judge DeCima's fact-based question with a lot of conclusions. Why? Why wasn't it relevant? You just said it wasn't relevant because it wasn't relevant. Because in this case, what Dr. Sokoloff is saying with respect to this defendant was that he was acting impulsively and that he had grandiose thinking. Yes, okay. And the law on that would be your response is, rather than just saying it's not relevant, why doesn't that go to a jury to decide whether that affected their judgment as to whether he really intended to intimidate or impede, or he was just mouthing off a bunch of words that blew out of his head and mouth without really thinking about the consequences? Because at this time when the judge was making this determination, that evidence was both untimely and also not relevant. You got the untimely. You're talking about relevance. Why isn't it relevant? Because he could still form the intent to impede or interfere with or retaliate regardless of whether he was impulsive at that moment. Where's that in the record? That's been our argument. That's argument. Where is it in the record? Where's the factual basis, the evidence, the law to support your conclusion that it doesn't negate the requisite intent? Do you have a case? No, Your Honor. I don't have a case. No, but even if it could be argued that he still, you know, could form the intent even though he acted impulsively, it doesn't eliminate the countervailing argument that he acted impulsively without intent, does it? No, it's still relevant, isn't it? Because relevance is a really low threshold. Does it make it? I'm amending Judge Tashima's question, but relevance is such a low threshold, all it has to do is make it the slightest bit more probable that there was a lack of the requisite intent and it was just a bursting forth of a brand-new idea. There could be some sort of situation where it would be relevant, but we believe in this situation on the day of trial that the judge properly determined that there hadn't been a nexus shown and it shouldn't be presented as a nexus. When you say this situation on the nexus, you're talking about the nexus. We're talking about to the telephone threat, right? Yes, Your Honor. Okay. Go ahead. I just want to make that question. Yes. In addition, the defendant is arguing that the continuance and short-setting the trial were the primary issues here on appeal. We would also point out that we don't believe that the defendant was diligent in presenting this evidence and we believe that the court articulated that it would have inconvenienced the court and those are the other factors that one should consider in evaluating this decision under the Flint factors. Next, I'll take up the second issue which was raised on appeal. The district court did not err in admitting the photographs the defendant had posted on MySpace for everyone to see of himself holding firearms. These were pictures that Detective Halsey saw prior to receiving the threats. I'd like to point out that this court in Orazco-Santillon and again in Bagadir Sarian has repeatedly articulated that in looking at alleged threats, the they should be considered in light of their entire factual context and we believe that these pictures were part of the entire factual context. They were posted by the defendant for everyone to see. The person who received the threat had seen them prior to the threat. He also saw them after the threat. And the threat itself does reference bust, which was interpreted as meaning shoot. So the weapons were relevant to the threat itself. Does he have to know that those pictures had been observed by the subject of the threat? Does the defendant need to know? Yes. I don't believe the defendant needs to know. It's relevant to what a reasonable person would, whether a reasonable person would foresee that the threat would be interpreted by Detective Halsey as a serious expression. Assuming he had seen them. Assuming he had seen them. But the defendant also is posting them for everyone to see. In addition, should the court find error, we believe any such error would be harmless. With respect to point 3, which is the questions about the tape, while I wouldn't ask that question again, I believe that it was relevant to the issue at hand, whether a reasonable person would foresee that it would, that the threat would be interpreted by Detective Halsey as a serious expression of intent to harm or assault. It was relevant there. And in addition, any such error was not plain error. It did not affect his substantial rights, and it did not affect the fairness or integrity of the proceedings. In addition, such error would be harmless should the court find it. So when you say tape, you're talking about the tape around the stock. Yes, Your Honor. You're talking about, like, an audio tape or no audio tape. No, you're right. There are two tapes. Well, I don't remember what you're talking about. No, I was talking about the tape around the rifle in one of the MySpace pictures. And then with respect to the one question that I asked with respect to gang affiliation and initiation, you know, it was early in my career as an AUSA, and I would certainly not ask that question again. I thought that the other side had opened the door, and now I know I don't have to walk through every door. But in addition, we don't believe such question resulted in plain error, and we think that any error there was was certainly harmless. There was a wealth of evidence in this case, the tape itself. And the tape is what the jury looked at. The jury asked for the tape to be re- to re-hear the tape, and that was their focus. In addition, there was all that evidence in terms of the defendant not wanting to show up for his grand jury, his second threat that he gave after arrest, saying that it would have been dangerous for the officer to, if the arrest had not happened at the courthouse. But then, of course, he backs off on that when he sees the tape recording, and then also his statements that he wouldn't accept calls from the feds or from scrimy snitches. There was a wealth of evidence. There were overlaying evidence and overlaying layers of corroborating evidence that showed the defendant was guilty and that he did have an intent to impede, intimidate, interfere with, or retaliate against Officer Housie. And if you have any more questions, I'd be more than happy. I don't think we do. Thank you very much. Thank you for your question. I don't have a question, but I want to commend you for your candor. You know, we all try cases three times. The case we're going to try, the case we try, and the case we should have tried. So. I used to feel that way about arrest. A real argument, too. Very commendable. Thank you. Thank you. It's hard to learn. As long as we're being constructive. When you get a question that asks you for a fact-based answer, don't just answer with a conclusion. Relevance has, you know, anything can be relevant. The question is, why wasn't it in this case? And so I'm still wrestling with your answer on that one. But that's the kind of thing one learns. And maybe there isn't an answer. I don't know. Okay. I'm sorry, Your Honor. No, it's okay. I applaud your candor and willingness to tell us what was going on, and I'm glad you were able to come up and carry forward on the process of trying the case and then also getting to argue it. I think that's good. I am, too. Thank you. Thank you. Just a couple points in response. One was that the prosecution, the government, contends that there is really overwhelming evidence that he had this specific intent. But I think that there are some important points that shouldn't be overlooked. One, there is evidence that he was actually complying with the process, although he said he didn't want to be a snitch, but he was complying with the process. If you look at the voicemail. I thought he didn't show up, and that's why they had to have a grand jury subpoena. He didn't show up once. There is evidence that on another time he contacted the AUSA to reschedule because it interfered with his class. And then they rescheduled to accommodate him, and then he made the phone call. So where's the compliance? I think there is evidence. I don't think it's overwhelming that he had this intent. He does, in the voicemail, at the beginning, he says. . . I just listened to it this morning. It didn't sound terribly compliant. He does mention to the officer, if you want to work things out, sit down with my lawyer. He doesn't start out saying things that are inappropriate or coming at it that way. He comes at it. I agree with that. So I would. . . I mean, I think it is fair to say it's clear he didn't want to be a grand jury witness and he didn't want to testify against his friend, but I do think that there is some evidence that he was reluctantly trying to go with the process, although he didn't appear sometimes and whatnot. He did show up on the 29th, even after he made that voicemail message. So I don't think it's all just that clear. Thank you, counsel. Thank you. We appreciate the arguments of both of you. They've been very helpful. The case is submitted and we're adjourned for this session. All rise.
judges: Tashima, Graber, Fisher